UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CHARLES GAMBINA,<br>                Plaintiff,<br>     v.<br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br>                Defendant.<br>_____ | NO. SACV 14-1971-KS<br><br>MEMORANDUM OPINION AND ORDER |

**INTRODUCTION**

Plaintiff filed a Complaint on December 12, 2014, seeking review of the denial of his application for disability insurance ("DIB"). On September 17, 2015, the parties filed a Joint Stipulation ("Joint Stip.") in which plaintiff seeks an order reversing the Commissioner's decision and either ordering the payment of benefits or remanding the matter for further administrative proceedings. (Joint Stip. at 31.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 31-32.) On August 17, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 15-16.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On May 23, 2011, plaintiff, who was born on September 11, 1954, filed an application for a period of disability and DIB.[1] (Administrative Record ("A.R.") 30, 188-202.) Plaintiff alleged disability commencing May 23, 2009, due to "seizures, diabetes, depression, hip replacement, heart bypass surgery, [and] gallbladder surgery." (*Id.* 188, 191.) Plaintiff previously worked as a computer network technician. (*Id.* 41, 192.) The Commissioner denied plaintiff's applications initially (*id.* 73-77) and on reconsideration (*id.* 81-90). On July 25, 2012, plaintiff requested a hearing. (*Id.* 91-92.) On March 14, 2013, Administrative Law Judge Joseph P. Lisiecki, III ("ALJ") held a hearing. (*Id.* 55-68.) Plaintiff, who was represented by counsel, and Susan Allison, the vocational expert ("VE"), testified at the hearing. (*Id.* 59-63, 64-67.) On April 25, 2013, the ALJ issued an unfavorable decision, denying plaintiff's application for DIB. (*Id.* 30-42.) On October 14, 2014, the Appeals Council denied plaintiff's request for review. (*Id.* 1-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2013 and had not engaged in substantial gainful activity from the alleged onset date of May 23, 2009. (A.R. 32.) The ALJ further found that plaintiff had the following severe impairments: "coronary artery disease (CAD); gout; osteoarthritis of hips and knees; obesity; and degenerative disc disease of the lumbar and cervical spine." (*Id.*) The ALJ determined that plaintiff had also been diagnosed with the following non-severe medically determinable impairments: "seizure disorder, hypertension, and hyperlipidemia." (*Id.*) The ALJ concluded that plaintiff did not have an impairment or combination of

---

[1] Plaintiff was 54 years old on the alleged onset date and thus was defined as a person closely approaching advanced age under agency regulations. *See* 20 C.F.R. § 404.1563(d). On September 11, 2009, plaintiff turned 55 and, as a result, became a person of advanced age under agency regulations. *Id.* § 404.1563(e).

2

impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* 34.) The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform "a reduced range of light work" as follows:

> [plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk (with normal breaks) for four hours in an eight hour workday; he can sit (with normal breaks) for six hours in an eight hour workday; he can occasionally climb ramps and stairs; he can never climb ladders, ropes, and scaffolds; he can occasionally balance, stoop, kneel, crouch, or crawl; and he must avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dusts, gases, poor ventilation, and heights.

(*Id.*) The ALJ found that plaintiff could perform his past relevant work as a computer network technician (DOT 039.264-010) and therefore had not been under a disability, as defined in the Social Security Act, from the alleged onset through the date of the ALJ's decision. (*Id.* 41-42.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's

findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

Plaintiff alleges the following four errors: (1) the ALJ improperly assessed the opinion of Halimah McGee, Ph.D., an examining clinical psychologist (Joint Stip. at 3-5); (2) the ALJ improperly evaluated the evidence of plaintiff's physical limitations (*id.* at 9-11); (3) the ALJ improperly assessed the credibility of plaintiff's subjective symptom testimony

4

(*id.* at 17-20); and (4) the ALJ improperly assessed the opinion of Sergio Ulises Rodas, M.D., plaintiff's treating physician (*id.* at 26-27).

**I.     The ALJ Erred By Failing To Fully Develop The Opinion Of Dr. McGee.**

Plaintiff's first contention is that the ALJ improperly assessed the opinion of Halimah McGee, Ph.D., the examining clinical psychologist. (Joint Stip. at 3-5.)

**A. Background**

Plaintiff received two mental health examinations in connection with his application for DIB. First, on September 20, 2011, Jobst Singer, M.D., a board eligible psychiatrist, performed a consultative examination of plaintiff. (*See* A.R. 549-52.) Dr. Singer opined: "Based on the interview, [plaintiff's] ability to understand, remember, and perform instructions is unimpaired for simple tasks and mildly impaired for complex tasks. Based on the information obtained from the interview, no clear psychiatric basis was found that would prevent [plaintiff] from completing a full day of work." (*Id.* 551.)

Eight months later, on May 14, 2012, Dr. McGee, a clinical psychologist, performed a consultative examination of plaintiff. (*See* A.R. 693-98.) Based on his observations of plaintiff and plaintiff's performance on a series of objective tests, Dr. McGee found the following:

> [Plaintiff] evidences mild cognitive limitations regarding his ability to work in that he displays mild deficits in attention and concentration on some types of tasks. However, [plaintiff] is capable of learning a routine, repetitive skill. He would be able to function in a regular job setting without additional behavior controls. His reasoning capacities are adequate. . . . [He] would be

>able to work with coworkers and the general public.  He relates adequately to authority figures. . . . [His] deficits in attention and concentration would limit the types of tasks he is able to learn, retain, and perform at this time.

(A.R. 697-98.)

Plaintiff characterizes Dr. McGee's opinion as limiting plaintiff to routine, repetitive tasks, a limitation that the ALJ neither included in his assessment of plaintiff's RFC nor expressly rejected.  (*See* Joint Stip. at 2-5.)  In the alternative, plaintiff contends that Dr. McGee's opinion about the types of tasks plaintiff could and could not perform was ambiguous, which triggered the ALJ's duty to contact Dr. McGee for clarification.  (*See id.* at 4) (citing 20 C.F.R. § 404.1512(e) and *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).  In response, the Commissioner contends that "[t]here was no evidence in the medical record that showed Plaintiff to have a severe mental impairment or that he was limited to performing simple, repetitive tasks."  (Joint Stip. at 7.)

**B.  Standard For Evaluating Conflicting Medical Opinions**

The ALJ is required to articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  When the opinion being rejected belongs to a treating or examining physician and is not contradicted by another medical opinion, the ALJ is required to articulate "clear and convincing" reasons supported by substantial evidence in the record for discounting it. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  When a treating or examining physician's opinion is contradicted by another medical opinion, the ALJ is required to articulate "specific and legitimate" reasons supported by substantial evidence for discounting it. *Garrison*, 759 F.3d at 1012.  Thus, an ALJ errs when he discounts a medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation

6

1  that another medical opinion is more persuasive, or criticizing it with boilerplate language
2  that fails to offer a substantive basis for his conclusion." *Id.* (citing *Nguyen v. Chater*, 100
3  F.3d 1462, 1464 (9th Cir. 1996)).  Additionally, "[w]hen there is ambiguous evidence or
4  when the record is inadequate to allow for proper evaluation of the evidence" in a disability
5  benefits case, the ALJ has an independent "'duty to fully and fairly develop the record and to
6  assure that the claimant's interests are considered.'" *Mayes v. Massanari*, 276 F.3d 453,
7  459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting
8  *Smolen*, 80 F.3d at 1288).

### C. ALJ's Decision

At step two of the sequential analysis, the ALJ adopted Dr. McGee's opinion that plaintiff is mildly limited in his ability to maintain concentration, persistence, and pace but found that plaintiff did not have a severe medically determinable mental impairment because his mental impairment "causes no more than 'mild' limitation in any of the first three functional areas [– *i.e.*, daily living, social functioning, and concentration, persistence, or pace –] and 'no' episodes of decompensation which have been of extended duration." (A.R. 34); *see also* 20 C.F.R. §§ 404.1520, 404.1520a.  At step four of the sequential analysis, the ALJ summarized Dr. McGee's opinion but omitted Dr. McGee's statement that plaintiff's "deficits in attention and concentration would limit the types of tasks he is able to learn, retain, and perform." (*See generally* A.R. 38.)  The ALJ provided no explanation for his omission of Dr. McGee's assessment that plaintiff would be limited in the types of tasks he is able to perform. (*See generally id.*)  However, at the hearing, the ALJ appeared to acknowledge Dr. McGee's opinion that plaintiff was unable to perform some tasks when he asked the VE whether an individual with plaintiff's education, training, and work experience could perform plaintiff's past relevant work if, in addition to having plaintiff's RFC as described on page five of the ALJ's opinion, the individual also was limited to performing "simple tasks with simple work-related decisions." (A.R. 64-65.)  The VE testified that an

7

individual with plaintiff's RFC and a limitation to "simple tasks with simple work-related decisions" would (1) be unable to perform plaintiff's past relevant work and (2) have no transferable skills. (*Id.* 65.) Thus, had the ALJ included a limitation to "simple tasks with simple work-related decisions" in his assessment of plaintiff's RFC, it would have most likely resulted in a finding of disability due to plaintiff's advanced age. *See* 20 C.F.R. § 404.1568(d)(4).

### D. Analysis

Defendant contends that Dr. McGee did not, in fact, opine that plaintiff was limited to performing "simple tasks with simple work-related decisions" or routine repetitive tasks and therefore the ALJ did not err by omitting this limitation from his assessment of plaintiff's RFC. Defendant may be correct that Dr. McGee did not opine that plaintiff was limited to simple, routine, or repetitive tasks, but Dr. McGee did opine that plaintiff could not learn and perform some "types of tasks." Thus, Dr. McGee's opinion was ambiguous about the types of tasks that plaintiff is unable to do, and the ALJ was required to re-contact Dr. McGee to fully develop the record to determine the scope of plaintiff's functional limitations. *See Mayes*, 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150. The ALJ's failure to do so was a legal error, *see Tonapetyan*, 242 F.3d at 1151, that may prove dispositive given the VE's testimony and plaintiff's advanced age.

On remand, the ALJ must re-contact Dr. McGee to determine the types of tasks that, in his opinion, plaintiff is unable to learn and perform and either credit this portion of Dr. McGee's opinion or articulate legally sufficient reasons for discounting it. The ALJ is reminded that the opinion of an examining physician like Dr. McGee is entitled to greater weight than that of a non-examining physician and, even when contradicted, may be entitled to the greatest weight. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 404.1527(c)(1)

8

("Generally, we give more weight to the opinion of a source who has examined [the claimant], than to the opinion of a source who has not.").

**II.     The ALJ Erred In His Assessment Of Plaintiff's Physical Limitations.**

Plaintiff's second contention is that the ALJ did not properly evaluate the evidence regarding plaintiff's physical impairments. Specifically, plaintiff contends that the ALJ disregarded plaintiff's left hip impairments and wrongly determined that plaintiff's left knee surgery resolved his left knee impairment and, consequently, incorrectly concluded that plaintiff retains the capacity to stand and/or walk for four hours in an eight hour workday. (*See* Joint Stip. at 10-11.) Plaintiff writes "no doctor provided this opinion and it is contradicted by the opinions of record."[2] (*Id.* at 11.) Defendant responds that the ALJ "discussed the medical evidence at great length, resolved conflicts, and set forth a full discussion of the evidence and reasons supporting his RFC finding." (*Id.* at 13.) As explained below, although the ALJ thoroughly summarized the record regarding plaintiff's physician limitations, he nevertheless failed to adequately support his decision to discount a portion of the examining physician's opinion.

**A. The Record Concerning Plaintiff's Ability To Stand And Walk**

Plaintiff testified at the hearing on March 14, 2013 that he could walk, at most, a mile and could not stand for "a long period." (A.R. 61, 63.) Nearly two years earlier, in 2011, plaintiff reported: having the ability to stand for 90 consecutive minutes (*id.* 205); spending 20-40 minutes preparing food or meals two to three times a day (*id.* 211); and going for

---

[2] Plaintiff also contends that the ALJ erred by declining to call a medical expert to testify despite scheduling one to appear at the hearing. (Joint Stip. at 11; *see also* A.R. 134-35.) Plaintiff states that, because the ALJ called a medical expert but assessed plaintiff's physical RFC without the medical expert's assistance, the ALJ improperly substituted his opinion for that of a medical expert. (Joint Stip. at 11.) For the reasons above, the Court need not reach this aspect of plaintiff's argument.

walks a couple of times a week (*id.* 213). The examining physician, Marwin Edris, M.D., a board eligible internist, opined on September 2, 2011 that plaintiff has the ability to stand and/or walk for two hours cumulatively in an eight-hour day. (*Id.* 525.) Plaintiff's treating physician, Dr. Sergio Ulises Rodas, who provided treatment records for the period of May through December 2012 (*id.* 800-14),[3] opined that plaintiff can stand and/or walk for no more than 30 minutes over the course of an eight-hour day. (*Id.* 799.) The reviewing physician, Colleen Ryan, whose specialty is family or general practice, opined that plaintiff retained the capacity to stand or walk for a period of at least two hours but less than six hours in an eight-hour workday. (*Id.* 583, 588.)

**B. ALJ's Assessment Of Plaintiff's Testimony**

The ALJ did not identify any specific portions of plaintiff's testimony that he found less than credible because he found that plaintiff's testimony as a whole was riddled with inconsistencies with plaintiff's prior statements and reported activities. "Although the inconsistent information provided by [plaintiff] may not be the result of a conscious intention to mislead," the ALJ wrote, "the inconsistencies suggest that the information provided by [plaintiff] generally may not be entirely reliable." (A.R. 39.) On this basis, the ALJ concluded that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms as a whole was not entirely credible. (*Id.* 38.)

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if

---

[3] The record, however, suggests that Dr. Rodas' treatment relationship with plaintiff began several years prior to May 2012. (*See* A.R. 426 (April 10, 2011 – Dr. Rodas is identified as plaintiff's primary doctor).)

10

the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Id.* In doing so, the ALJ must "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan*, 246 F.3d at 1208).

In this case, although the ALJ did not specifically identify portions of plaintiff's testimony that he found less than credible, the ALJ identified a series of specific inconsistencies that cast doubt on plaintiff's credibility as a whole. These inconsistencies included: plaintiff's daily activities, including taking care of his personal needs, driving, using the Internet, going shopping, and doing household chores; plaintiff's report that he went jogging in April 2010 (*see* A.R. 426 (April 10, 2010 – "yesterday while jogging, he tripped")), almost a full year after the alleged onset date; plaintiff's inconsistent statements about his ability to drive (*compare e.g.*, A.R. 212 (reporting that his driver's license was taken away when he became sick) *with id.* 61-62 (testifying that he drove his family members around)); and plaintiff's statements about his work history and reasons for leaving the workforce (*compare e.g.,* A.R. 191 (writing in his May 23, 2011 application for DIB that he left work because of his impairments and "no work" but indicating that he was continuing to look for work), 523 (reporting to examining physician on September 2, 2011 that he had last worked four months prior), 550 (reporting on September 20, 2011 that he worked as a computer technician for eight years, left work because he was laid off, but then worked part time until December 2010), 695 (reporting on May 14, 2012 that he worked as a computer technician for six years, left work because he was laid off, and does computer related work for temp agencies one day per week)).

Given the number and significance of these inconsistencies, particularly plaintiff's indication that he continued looking for work after the alleged onset date and his report that

11

he went jogging almost a full year after he allegedly became disabled, the Court sees no error in the ALJ's determination that plaintiff was not a credible reporter of his physical symptoms and limitations. *See Orn*, 495 F.3d at 636 (ALJs may use inconsistencies between the plaintiff's testimony and prior statements, conduct, and daily activities as grounds for discrediting the plaintiff's subjective symptom testimony); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (a claimant casts doubt on his claim of disability by holding himself out as capable of working after the alleged onset date). Thus, to the extent that the ALJ discounted plaintiff's testimony about his inability to walk and stand for long periods, the ALJ provided legally sufficient reasons supported by the record for doing so.

### C. ALJ's Assessment Of The Opinion Of Dr. Rodas

The ALJ similarly did not err in assigning "reduced weight" to the opinion of Dr. Rodas, who had opined, *inter alia*, that plaintiff could stand and/or walk for no more than thirty minutes during the course of an eight-hour day. (*See* A.R. 40.) The ALJ was required to articulate "specific and legitimate reasons," supported by substantial evidence, for discounting the opinion of treating physician when, as here, it was contradicted by another medical opinion. *Garrison*, 759 F.3d at 1012; *Orn*, 495 F.3d at 632. The ALJ satisfied this standard by explaining that Dr. Rodas' opinion was not supported by objective medical evidence of record and inconsistent with the record as a whole, plaintiff's reported daily activities, and the third party's statements regarding plaintiff's activities. (*See* A.R. 40.) With regards to Dr. Rodas' opinion that plaintiff could stand and/or walk for no more than thirty minutes during the course of an eight-hour day, the ALJ pointed out that Dr. Rodas' statement that plaintiff has an unsteady gait conflicted with Dr. Edris' report that plaintiff has a normal gait (*see* A.R. 524) but nothing in Dr. Rodas' treatment records contradicts Dr. Edris' findings (*see generally id.* 800-814). Further, plaintiff himself reported having the ability to stand for 90 consecutive minutes (A.R. 205) – a full hour longer than the period Dr. Rodas opined that plaintiff could stand over the course of an eight-hour day – and spending

20-40 minutes preparing food or meals two to three times a day (*id.* 211). Accordingly, the ALJ did not err in discounting Dr. Rodas' assessment of plaintiff's limitations on the grounds that it is inconsistent with the record and with plaintiff's reported activities.

### D. ALJ's Assessment Of The Opinion Of Dr. Edris

However, the ALJ failed to articulate specific and legitimate reasons supported by substantial evidence for discounting the opinion of Dr. Edris, the internal medicine specialist who examined plaintiff and opined that plaintiff was limited to sedentary work and could stand and/or walk for no more than two hours in an eight-hour day. The ALJ acknowledged that Dr. Edris limited plaintiff to sedentary work and standing or walking for no more than two hours, determined that Dr. Edris' opinion was "consistent with the record as a whole, as well as with [plaintiff's] activities of daily living," and assigned Dr. Edris' opinion "substantial weight" except as to his assessment that plaintiff was unable to lift and/or carry more than 10 pounds. (A.R. 40.) However, the ALJ neither credited Dr. Edris' opinion that plaintiff was limited to sedentary work and unable to stand and/or walk for more than two hours in a workday nor articulated a rationale for discounting this portion of Dr. Edris' opinion.

As stated above, an ALJ errs when he discounts a medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012 (citing *Nguyen*, 100 F.3d at 1464). Accordingly, on remand, the ALJ shall either credit Dr. Edris' opinion that plaintiff can neither stand nor walk for more than two hours a day or articulate specific and legitimate reasons for discounting it. The ALJ is again reminded that the opinion of an examining physician is entitled to greater weight than that of a non-examining physician and, even when contradicted, may be entitled to the greatest weight. *Garrison*,

13

759 F.3d at 1012; *see also* 20 C.F.R. 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined [the claimant], than to the opinion of a source who has not.").

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: December 16, 2015

                                          /s/ Karen L. Stevenson
                                          KAREN L. STEVENSON
                                          UNITED STATES MAGISTRATE JUDGE